IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KEVIN DAWSON,

    Plaintiff,

v.

ILLINOIS DEPARTMENT OF
CORRECTIONS, WEXFORD HEALTH
SOURCES, INC., CHRISTINE BROWN
and JEFFERY DENNISON,

    Defendants.

Case No. 3:18-CV-02058-NJR

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment by Defendant Wexford Health Sources, Inc. ("Wexford") (Doc. 99), and a Motion for Summary Judgment by Defendants Christine Brown, Jeffrey Dennison, and the Illinois Department of Corrections ("IDOC") (Doc. 101). For the reasons set forth below, the Court denies the Motions.

This action stems from events which occurred during Plaintiff Kevin Dawson's term of incarceration at Pinckneyville Correctional Facility, a facility operated by the Illinois Department of Corrections ("IDOC").

### FACTUAL AND PROCEDURAL BACKGROUND

Dawson alleges that due to injuries sustained in approximately 2009, he is paraplegic and has lost use of his legs (Doc. 68 at 2). As a result, he is confined to a wheelchair. This confinement means that Dawson needs help with basic activities connected with personal hygiene and bowel movements (*Id.*). Dawson states that during his time in IDOC facilities, he has been prescribed enemas by medical providers (*Id.* at 3). Dawson states that these

enemas must be provided and administered on a strict schedule so that he can evacuate his bowels. When he is not administered his enemas, Dawson states he experiences pain and suffering and is placed at greater risk of injury and medical complications (*Id.*). Dawson alleges that for a period commencing in June 2018, the treatment that he has received has in fact been sporadic and unreliable and that he has not regularly been provided with enemas or the appropriate accommodations for their use (*Id.*). Specifically, Dawson indicates that he has not been provided with a handicapped-accessible toilet and shower, that he has been forced to self-administer enemas without proper facilities for doing so, and that he has not regularly been provided with the prescribed enemas.

Records show numerous grievances filed in a period of approximately 15 months to the filing of the instant action. On July 29, 2017, Dawson filed a grievance indicating that he was receiving fewer enemas than previously, was being given the wrong size of enema, was being denied bathroom access and was being forced to administer enemas to himself in front of other inmates (Doc. 99-1 at 2). On June 28, 2018, Dawson filed a grievance alleging that he was denied a shower and that his cell was not cleaned prior to his placement. On August 3, 2018, Dawson filed a grievance indicating that he was forced to self-administer an enema while sitting over a plastic bag in a shower chair (Doc. 99-1 at 39). In that grievance, Dawson specifically directed his complaint at "who [sic] ever responsible or who ever rules that is or who ever make that policy an procedure" (*Id.*). Similarly, in a grievance of August 5, 2018, Dawson complained of not being given his enemas on several occasions, but specifically requested "to know who the person(s) denying me access to HCU for a serious medical needs & hold them accountable" (Doc. 99-1 at 43). Dawson followed this with a grievance dated August 14, 2019, in which he again complained of not receiving his enemas and noted that

he "rel[ied] on authority an [sic] stop violating my 8th amendment" by denying access to medical care (Doc. 99-1 at 47). Dawson again filed a grievance expressing similar concerns a week later, again requesting to know why he was being refused access to the HCU and his enema treatments (Doc. 99-1 at 56).

On August 29, 2018, Dawson filed a grievance alleging that facility practices and policies denied him his rights under the ADA by denying him access to an ADA-compliant bathroom. Dawson further noted that nurses had told him to defecate in a plastic bag due to his inability to use the non-compliant toilet in the cell, and that he had great difficulty applying his enemas without proper facilities (Doc. 99-1 at 21-22). In another grievance received October 2, 2018, Dawson indicated that he had been denied access to medical treatment on numerous days. Dawson appeared to indicate in that grievance that this sort of lapse in medical treatment was a regular occurrence (Doc. 99-1 at 27). That grievance was combined for administrative purposes with two other grievances date September 3 and September 10, 2018, which made similar complaints regarding lapses in Dawson's medical treatment (Doc. 99-1 at 29). This set of grievances contained detailed calendars outlining with specificity Dawson's claims as to the many days on which he alleges medical treatment was denied and the type of treatment that he felt should have been given (*E.g.*, Doc. 99-1 at 32). Dawson filed another grievance received on October 15 that reiterated these concerns, indicating that he had been repeatedly denied health care treatment for his enemas (Doc. 99-1 at 35). On November 14, 2018, Dawson filed a grievance alleging that he was given the wrong type of enema on that date (Doc. 99-1 at 15). On December 23, 2018, Dawson filed a grievance indicating that he had not timely received his prescribed enemas (*Id.* at 6). Dawson appealed denial of that grievance on February 8, 2019, indicating that after signing for

supplies on December 23 he did not receive any enemas until January 6, 2019, despite reporting his issues to a nurse every morning (Doc. 99-1 at 7). On May 19, 2019, Dawson filed another grievance again complaining that he was receiving fewer enemas and was being given the wrong type of enema and that he was not being sufficient access to bathroom facilities and the healthcare unit (Doc. 99-1 at 4).

Dawson filed his complaint on November 7, 2018 (Doc. 1). After initial screening, counsel was appointed to represent Dawson, and he filed an amended complaint on May 4, 2020 (Doc. 65).

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (*quoting* FED. R. CIV. P. 56(a)). Once the moving party has set forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "court may not assess the credibility of witnesses, choose

between competing inferences or balance the relative weight of conflicting evidence[.]" *Reid v. Neighborhood Assistance Corp. of America*, 749 F.3d 581, 586 (7th Cir. 2014) (*quoting Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005)).

## DISCUSSION

Defendants claim that Dawson has failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). Under the PLRA, inmates bringing an action under 42 U.S.C. § 1983 must exhaust all administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Administrative exhaustion "means using all steps that the agency holds out, and doing so properly." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotations omitted). This is a mandatory rule that a district court does not have discretion to waive. *Id.* at 93.

For suits brought by IDOC inmates, administrative remedies are those listed in the Illinois Administrative Code, which prescribes the grievance procedure for inmates. 20 Ill. Adm. Code 504.810. Under the Illinois Administrative Code, grievances should contain "factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or otherwise involved in the complaint." 20 Ill. Admin. Code 504.810(c). Where an inmate does not know the names of the individuals involved, the inmate should include "as much descriptive information about the individual as possible." *Id.*

The grievant need not lay out the facts, or articulate legal theories, but the grievance must, at least, object intelligibly to some asserted shortcoming. *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004). The grievance process is intended to give prison officials a fair opportunity to redress the grievance internally before resorting to litigation, as well as

shedding light on factual disputes and reducing potential damages. *Id.* at 524; *Pozo v. McCaughtry*, 286 F.3d 1022 (7th Cir. 2002).

Here, while there is some uncertainty regarding the exact number of grievances filed and appealed to the ARB by Dawson, it is clear that Dawson raised issues regarding the provision of his enemas and the accessibility of facilities numerous times over an extended period. Taken together, his grievances clearly show that he expressed his feeling that the policies and processes in Pinckneyville that governed the way his medical treatment was administered and the way that accommodations were made or not made for his condition were unacceptable and violated his rights.

Thus, it seems clear to this Court that Dawson sufficiently stated the substance of his complaint to satisfy administrative exhaustion requirements. IDOC, Brown, and Dennison argue in their MSJ that Dawson has not satisfied administrative exhaustion because he failed to "include specific complaints regarding any of the specific ADA or RA violations" and he did not "mention any action or inaction on behalf of Defendants Brown or Dennison" (Doc. 101 at 7). Indeed, IDOC Defendants argue that his grievances could not possibly have satisfied exhaustion for claims against Dennison, who "did not become the Chief Administrative Officer of Pinckneyville Correctional Center until January 2020" (*Id.* at 8). Similarly, Wexford in its MSJ claims that Dawson failed to exhaust his administrative remedies because he did not name Wexford in his grievances except in reference to "the actions of its employees" (Doc. 99 at 12).

The purpose of the administrative exhaustion requirement is to put prison officials on notice to the general substance of potential claims sufficient to give them an opportunity to investigate and remedy them of their own accord, without resorting to federal litigation.

Administrative exhaustion is not intended to create a shield against all actions and should not be interpreted as an invitation to establish a Kafkaesque labyrinth of hurdles and specifications that must be complied with precisely in order for an action to be permissible. Prisoners often lack the education, legal skills, and access to information that would permit them to frame their grievances in the most accurate possible manner, and as such their writings should be interpreted broadly.

Here, for example, Dawson consistently over a period of approximately a year filed numerous grievances complaining about the manner in which his medical treatment was administered and the facilities that he was provided for his disability. Dawson's complaints do not take issue solely with the way that any particular nurse or correctional officer treated him, but rather they criticize the general routine of his treatment at the prison—while he may not always use words such as policies, practices, or procedures, it is clear that he is complaining about policies, practices and procedures that apply to the treatment and facilities given to him by IDOC and Wexford employees.

It is true that Dawson does not specifically name Wexford, Dennison, or Brown as the targets of his grievances. Prisoners should not necessarily be expected, however, to know which bureaucrat, administrator, or entity is responsible for the specific policy with which they take issue. Rather, as the Illinois Administrative Code clearly states, they should merely provide "as much descriptive information about the individual as possible." 20 Ill. Admin. Code 504.810(c). Here, Dawson clearly and consistently outlined certain practices that he alleged violated his rights. A competent review of his grievances would have identified that those practices were within the purview of Pinckneyville's Healthcare Unit Administrator, its Warden, IDOC itself, and Wexford, the company employing most of the medical staff

providing services in the IDOC system. Because these positions and entities bear ultimate responsibility for the practices that led to the treatment at issue, they are the appropriate defendants, even if as in the case of Dennison the individuals holding those titles may not have been in place at the time of the events in question.

Accordingly, the Court finds that Dawson has satisfactorily exhausted his administrative remedies, and his action may proceed on all counts.

## CONCLUSION

The Court **DENIES** the Motions for Summary Judgment (Docs. 99, 101)

.

**IT IS SO ORDERED.**

**DATED:  May 24, 2021**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**